## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| Rick Atkins and Karole Atkins, individually and as next of kin to the decedent, Thomas Atkins | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | Case No.: _____ |
| | ) | JURY DEMANDED |
| CoreCivic, Inc., Sam Rogers, individually, and in his Official Capacity as Warden of Whiteville Correctional Facility, the Municipality of Hardeman County, Tennessee, and Defendants John Doe and John Doe II | ) ) ) ) ) ) | |
| **Defendants.** | ) | |

---

## COMPLAINT
---

Comes the Plaintiffs, Rick Atkins and Karole Atkins, individually and as next of kin and representative of the estate of Thomas Atkins, by and through counsel and files this action under the 8th Amendment to the United States Constitution, 42 U.S.C § 1983, T.C.A. § 20-5-106, and the laws of the United States and the State of Tennessee against the above-named Defendants. In support, Plaintiffs would show as follows:

## BACKGOUND

The Plaintiff's adopted son, Thomas Atkins, was murdered in his cell at the Whiteville Correctional Facility (WCF) during the early morning hours of February 19, 2020. Ten days before his murder, Thomas Atkins was raped by an inmate identified only as "Hunt" (Defendant John Doe). This action is brought against CoreCivic, the private prison corporation that operated WCF, and Sam Rogers, the warden that oversaw the operations at

WCF, for failing to protect Thomas Atkins from sexual assault and murder. Plaintiffs also bring this action against the municipality of Hardeman County, for continuing to contract with Defendant CoreCivic to operate the WCF despite overwhelming evidence that prisons operated by Defendant CoreCivic, both nationwide and in Tennessee, are chronically understaffed and excessively violent. Finally, Plaintiffs bring actions against Defendant John Doe the assailant that raped Thomas Atkins, and Randy Chapman, the man that murdered Thomas Atkins in his cell at the WCF.

## PARTIES

1.      Plaintiffs, Rick Atkins and Karole Atkins are citizens and residents of Blount County, Tennessee. They reside at 910 Old McGinley Dr., Maryville Tn. 37803.  Rick and Karole Atkins are the parents of, and next of kin to, the deceased Thomas Atkins.

2.      The Decedent, Thomas Atkins, during all times relevant to this action, was an inmate at Whiteville Correctional Facility, in Whiteville, Tennessee.

3.      Defendant CoreCivic Inc. (CoreCivic, *previously conducting business as*, Community Corrections Corporation of America), is a private corporation organized under the laws of the State of Maryland. CoreCivic regularly conducts business in the State of Tennessee by owning and operating four private prisons in the State of Tennessee, including WCF.  Defendant CoreCivic's principle place of business is located at 5501 Virginia Way, Suite 110 Brentwood, TN 37027. Defendant CoreCivic's registered agent, CT Corporation System, is located at 300 Montvue Road, Knoxville, TN 37919. At all times material to this Complaint, Defendant CoreCivic was acting under color of state law.

4.      The WCF is located in Hardeman County, Tennessee and is supervised by the Tennessee Department of Corrections (TDOC). WCF is operated by a for-profit prison entity

(CoreCivic) as a private, for-profit prison.

5.    Defendant Warden Sam Rogers is and was at all times relevant to this Complaint, an employee of a corporation operating a "private prison" under contract with the State of Tennessee. CoreCivic and Warden Rogers have acted and continue to act under color of state law. All the defendants are sued in their individual and official capacities.

6.    Defendant Hardeman County (Hardeman County) is and was at all times material to this Complaint a county government in Tennessee where Defendant CoreCivic operates WCF and HCCF.

7.    Defendant John Doe is, upon information and belief, an inmate at Whiteville Correctional Facility.

8.    Defendant Randy Chapman is presently an inmate at the West Tennessee State Penitentiary.  At the time this cause of action arose, he was an inmate at the Whiteville Correctional Facility. On January 22, 2021, Mr. Chapman pleaded guilty to the first-degree premeditated murder of Thomas Atkins.

## JURISDICTION AND VENUE

9.    The jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C § 1343.

10.    That the acts and omissions giving rise to this complaint occurred at the WCF. Plaintiff brings this action pursuant to 42 U.S.C. § 1983, the Eighth Amendment of the United States Constitution and laws of the State of Tennessee.

11.    Defendant CoreCivic is headquartered in Williamson County, Tennessee. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial portion of the acts and omissions giving rise to this action occurred in this judicial district.

12.     This Court has supplemental jurisdiction over all Common and State law claims made under 28 U.S.C. § 1367 because there is a common nucleus of operative facts between the State and Federal claims.

## FACTS

13.     Defendant CoreCivic operates four for-profit prisons in the State of Tennessee, including two in Hardeman County, Tennessee: Whiteville Correctional Facility (WCF), and Hardeman County Correctional Facility (HCCF).

14.     T.C.A § 41-24-103(c) prohibits the TDOC from having more than one prison operated by a private entity.

15.     To circumvent T.C.A § 41-24-103(c), TDOC outsources prison management of WCF and HCCF to Hardeman County. Hardeman County then subcontracts with Defendant CoreCivic to operate WCF and HCCF pursuant to the County Correctional Incentives Act codified at T.C.A § 41-8-101 *et. seq.*

## The Audits

16.     Pursuant to T.C.A. § 41-8-109, the Tennessee Comptroller of the Treasury audits (the Audits) WCF and HCCF to "ensure that the State is receiving the quality and level of service as described in the contract," and reports its findings to the Joint Government Operations Committee of the Tennessee General Assembly. The Joint Government Operations Committee of the Tennessee General Assembly reports the findings from the Audits "to the parties responsible for renewing the contract." T.C.A. § 41-24-105. Here, that party is Defendant Hardeman County.

17.     The contract to operate a private prison may only be renewed if the subcontractor is providing the same quality of service at a cost five percent lower than the

4

State. As stated above, the purpose of the Audits as it relates to Defendant Hardeman County is to provide it information about the operation of the WCF so that it may determine whether or not to renew its contract with Defendant CoreCivic.

18.     The Tennessee Comptroller of the Treasury audited the Department of Correction for the periods of July 1, 2014 through August 31, 2017 (the 2017 Audit), and from October 1, 2017, through July 31, 2019 (The 2019 Audit). The scope of the audits includes a review of internal operations and compliance with laws, regulations, policies, procedures, and provisions of contracts. The Comptroller conducted site visits at three of CoreCivic's facilities including WCF.

**Audit Findings – Record Keeping**

19.     The Audits reflect that the record keeping at WCF was so poor that auditors "cannot effectively track whether CoreCivic is meeting its contractually required staffing levels." When auditors were able to evaluate staffing levels, they were frequently deficient. Nevertheless, Hardeman County has continuously renewed its contract to with CoreCivic to operate the WCF.

20.     Both the 2017 and 2019 Audits found that CoreCivic's staffing reports were replete with errors and omissions, particularly with regard to its staffing records. The Comptroller found that the inaccuracies and omissions were so significant, that TDOC "may not be able to track CoreCivic's vacant correctional officer positions . . . thereby preventing the department from properly overseeing CoreCivic's contract requirements."

21.     The 2019 Audit also found that CoreCivic's records related to inmate deaths and serious injuries were also replete with errors. The 2019 Audit found that internal controls to ensure CoreCivic facility staff collected and accurately reported incident information for

5

inmate deaths, inmate assaults, and inmate accidents and injuries. These control deficiencies impacted TDOC's ability to oversee the facility to ensure a safe and secure correctional environment for its inmates.

**Staffing**

22.    The 2017 and 2019 Audits include evaluations of CoreCivic's ability to properly staff its facilities.

23.    With regard to Defendant CoreCivic's ability to properly staff WCF, the 2017 Audit made the following findings:

   a. WCF operated with fewer than approved correctional officer staff, did not have all staffing rosters, and did not follow staffing pattern guidelines.

   b. WCF was consistently short staffed during the 2017 Audit period.

   c. Shortages in correctional officers' staff may have limited WCF's ability to effectively manage its inmate population.

   d. In the 2017 Audit, the Comptroller analyzed the staffing of seventeen sample guard positions at WCF. They found that WCF needed 79 officers to cover those seventeen positions during a shift, but on average the facility provided only 57 officers per shift.

   e. The 2017 audit found systemic problems at HCCF and Trousdale-Turner Correctional Center (both operated by CoreCivic). The audit further noted that information provided by CoreCivic concerning Trousdale-Turner and HCCF was so incomplete that it was not possible to determine the accuracy of staffing levels.

24.    The 2019 Audit reflected that CoreCivic had failed to remedy several of the

problems noted in the 2017 Audit, particularly with regard to staffing. Specifically, the 2019 Audit found that "CoreCivic facilities' monthly staffing reports contained the same errots noted in the prior audit, so department management cannot effectively track whether CoreCivic is meeting its contractually required staffing levels."

25.    When there was sufficient information to evaluate staffing levels, the 2019 Audit frequently found that the staffing was insufficient. For example, the 2019 Audit found that WCF left seventy-five staff positions vacant for over forty-five days, which the audit found, directly correlated to the correctional officer staffing and overtime issues.

26.    Additionally, WCF was unable to properly staff first or second shift at WCF. Specifically, the 2019 Audit found that WCF's average approved correctional officer post for first shift was 60 and average amount of posts filled was 42, leaving a 30 percent deficiency. WCF's average approved correctional officer post for second shift was 40 and average amount of posts filled was 32, leaving a twenty-percent deficiency.

27.    The 2019 Audit found that WCF suffered from a high turnover rate among its corrections officers. For example, in 2018, there were 233 "separations", representing a turnover rate of seventy-six percent (76%).

**Nationwide Practice of Understaffing and Violence**

28.    The systematic staff shortages identified in both the 2017 Audit and the 2019 Audit are not limited to Tennessee, but rather appear to be part of a nation-wide strategy by CoreCivic to limit costs and increase profit.

29.    For example, in a report released April 25, 2017, the United States Department of Justice Office of the Inspector General (the OIG Report) found widespread understaffing at a detention facility in Leavenworth, Kansas operated by CoreCivic, with staff vacancy

levels reaching as high as 23 percent between 2014 and 2015.

30.     The OIG Report also found that, in 2011, CoreCivic had concealed its practice of "triple bunking" detainees into two-person cells in advance of an accreditation audit by the American Correctional Association.

31.     On or about February 23, 2017, a federal jury found that CoreCivic had violated inmates' Eighth Amendment rights to be free from cruel and unusual punishment by being deliberately indifferent to the serious risk posed by the company's practice of understaffing the Idaho Correctional Center.[1]

32.     In a report released on July 10, 2019, the nonprofit organization Human Rights Defense Center examined the number of homicides at CoreCivic-run facilities as compared to State-run facilities form 2014 through June of 2019. They found that the homicide rate at CoreCivic facilities was four times higher than the homicide rate at facilities operated directly by TDOC.

33.     Since October of 2018, TDOC has assessed a total of two hundred fifty-nine thousand three hundred thirty-six dollars and twenty nine cents ($259,336.29) in liquidated damages against Defendant CoreCivic based on staffing shortages.

34.     Despite these findings, Defendant Hardeman County has renewed its contract with Defendant CoreCivic to operate WCF in Hardeman County continuously since 2002.

## Audit Findings – Compliance with PREA

35.     Congress enacted the Prison Rape Elimination Act of 2003 (PREA) to address the problem of sexual abuse of inmates. PREA applies to all public and private correctional

---

[1] *See* Rebecca Boone, *Jury: Prison Company Violated Rights, But No Need to Pay*, Associated Press, Feb. 24, 2017, https://apnews.com/article/f5b7d1fc95f74814b96541fb3cdbc75b .

facilities that house inmates, including the WCF.

## PREA Screenings

36.     TDOC requires that every inmate receive a PREA screening upon entry into a correctional institution.

37.     Once an inmate arrives at a facility, TDOC requires that an initial PREA screening take place within seventy-two hours, and a second screening within thirty days. The purpose of PREA screenings is to allow prison officials to make informed decisions with regard to inmate housing, cell assignments, and work in an effort to separate those inmates with a high risk of committing sexual abuse from potential victims.

38.     The 2019 Audit found that "several inmates . . . at CoreCivic facilities did not receive a PREA screening within the 72-hour and/or 30-day deadlines set by the policy."

## PREA Reporting

39.     WCF staff are required to enter sexual abuse allegations into the PREA Allegation System (PAS) within twenty-four hours of the report.

40.     The 2019 Audit examined a sample of thirty-eight PREA reports made during the audit period. The 2019 Audit found that, of the thirty-eight reports, thirty-four of them (representing 89% of the sample) were not timely entered into the PAS.

41.     WCF management acknowledged the failure to perform the required PREA screenings and stated that the issues were likely the result of staffing shortages.

42.     Despite the findings from the TDOC, the Department of Justice Office of Inspector General, and the Human Rights Defense Center, Hardeman County continued to renew its contract with CoreCivic to operate WCF in Hardeman County, Tennessee.

43.     The forgoing facts demonstrate that CoreCivic, its wardens, and senior officers

9

adopted and enforced a policy of understaffing and ignoring their duty to screen inmates to determine the risk they posed to other inmates. These policies and practices reflected a deliberate indifference on the part of CoreCivic, its wardens, and senior officers to the safety of the inmates in their care. Their deliberate indifference created an environment that was particularly dangerous to inmates like Thomas Atkins, because of the systematic issues of understaffing and the increased violence that results from understaffing. Their deliberate indifference proximately and factually led to the sexual assault and unnecessary death of Thomas Atkins.

44.    The forgoing facts also demonstrate that Defendant Hardeman County had a policy or custom of continuing to renew its contract with Defendant CoreCivic to operate the WCF regardless of whether they could do so safely and consistently with inmates' eighth amendment rights to be free from cruel and unusual punishment. This policy of deliberate indifference with regard to how inmates were being confined at WCF and HCCF was the moving force behind the constitutional deprivations endured by Thomas Atkins as described herein.

## Thomas Atkins

45.    Thomas Atkins entered into the custody of the Whiteville Correctional Facility in late 2019, and remained there until his murder on or about February 19, 2020.

46.    On February 9, 2020, Thomas Atkins was in his assigned cell[2] with his cellmate. At approximately 1:00 p.m., another inmate, known only as "Hunt" (Defendant John Doe) came into his cell and threatened Thomas Atkins with a knife. After instructing the cellmate to leave, Defendant John Doe proceeded to orally and anally rape Thomas

---

[2] Believed to be HD210.

Atkins in his cell.

47. On February 10, 2020, WCF Officers Jacob Wolford and Mekel Brown transported Thomas Atkins to Jackson-Madison County General Hospital where he was evaluated by Cassie Revelle, a nurse specializing in sexual assault.

48. Nurse Revelle's report reflects that Mr. Adkins was forced to lay down onto his right side before being anally penetrated. Her report further reflected abrasions to Mr. Atkins anus "1' o'clock to 5 o' clock."

49. Upon information and belief, Thomas Atkins was transferred to another holding cell following these events.

50. Upon information and belief, after being transferred to another holding cell, Thomas Atkins, asked to be put into protective custody when his new cell mate began "roughing him up and fighting" with him. Upon information and belief, his request was either ignored or denied.

51. On February 19, 2020, at approximately 1:44 a.m., Thomas Atkins was found dead in his cell.

52. The autopsy summary states that Mr. Atkins was found unresponsive in his cell with cloth ligatures tied around his hands, feet, and neck. He was strangled so forcefully, that his hyoid bone and thyroid cartilage were fractured. He also suffered multiple severe blunt force injuries to his body and head, and numerous lacerations to his head and extremities. The cause of death was determined to be asphyxia by ligature strangulation, and the manner of death was determined to be homicide.

**CLAIMS**

**Count I: 42 U.S.C § 1983 – Defendants Core Civic, Warden Sam Rogers**

53.     All prior paragraphs are incorporated herein by reference.

54.     At all times material to this action, Defendants acted under the color of governmental authority and law by performing functions traditionally reserved to the State. Specifically, WCF incarcerated State inmates and pretrial detainees. Therefore, WCF is a state actor and subject to the same laws and rules applicable to any governmental entity, including the Eighth Amendment and 42 U.S.C § 1983.

55.     WCF is liable for violations of constitutional rights resulting from WCF's own official policies, as well as the practices and customs that have the force of official policy when those policies result in violations of inmate's constitutional rights.

56.     The Plaintiffs bring claims against all Defendants under 42 U.S.C. §1983 because the Defendants violated Thomas Atkins's Eighth Amendment right to be free from cruel and unusual punishment.

## Count II: 42 U.S.C § 1983 – Hardeman County

57.     All prior paragraphs are incorporated herein by reference.

58.     Defendant Hardeman County continued to renew Defendant CoreCivic's contract to operate the WCF in Hardeman County.

59.     Continuing a contractual relationship with Defendant CoreCivic in the face of the findings from the 2017 and 2019 Audit constitutes tacit approval of Defendant CoreCivic's unconstitutional conduct and demonstrates deliberate indifference to the conditions in which inmates at WCF are confined.

60.     Defendant Hardeman County had a policy or custom, of renewing Defendant CoreCivic's contract to operate WCF in Hardeman County despite the findings from State auditors. This policy or custom constitutes deliberate indifference on the part of Hardeman

County.

61.     The policy or custom of continuing to renew Defendant CoreCivic's contract as described herein, was the moving force behind the constitutional deprivations of the Plaintiffs as further detailed herein.

### Count III: Wrongful Death – All Defendants

62.     All prior paragraphs are incorporated herein by reference.

63.     Plaintiffs bring claims of wrongful death against all of the Defendants.

### Count IV: Premises Liability – Hardeman County and CoreCivic

64.     All prior paragraphs are incorporated herein by reference.

65.     Operating the WCF in light of the staffing shortages identified in the 2017 and 2019 Audits created a dangerous condition on the real property at WCF. Defendants Hardeman County and CoreCivic had notice of this dangerous condition through the Audits.

66.     Defendant Hardeman County continued to permit Defendant CoreCivic to operate WCF despite knowledge of his dangerous condition.

67.     This dangerous condition, collectively acts and omissions of the Defendants noted herein, proximately caused the Plaintiffs injuries.

68.     Plaintiffs bring claims of Premises Liability against Hardeman County and CoreCivic.

### Count V: Negligence – All Defendants

69.     All prior paragraphs are incorporated herein by reference.

70.     Plaintiffs bring claims of negligence against Warden Sam Rogers, CoreCivic and Hardeman County for the sexual assault, physical assault, and death of Thomas Atkins.

### Count VI: Gross Negligence – All Defendants

71.     All prior paragraphs are incorporated herein by reference.

72.     Plaintiffs bring claims of gross negligence against Warden Sam Rogers, CoreCivic, and Hardeman County for the sexual assault, physical assault, and death of Thomas Atkins.

## Count VII: Assault – Defendant John Doe

73.     All prior paragraphs are incorporated herein by reference.

74.     Plaintiffs bring a claim of assault against John Doe for knowingly and intentionally inflicting bodily injury, specifically sexual assault by way of anal and oral penetration, upon the Decedent, Thomas Atkins on or about February 9, 2020.

## Count VIII: Assault – Randy Chapman

75.     All prior paragraphs are incorporated herein by reference.

76.     Plaintiffs bring a claim of assault against Defendant Randy Chapman for knowingly and intentionally inflicting bodily injury upon the Decedent, Thomas Atkins on or about February 19, 2020, resulting in his death.

## Prayer for Relief

77.     That after investigating the allegations contained herein, the Defendants be required to identify any third parties that they believe caused or contributed to the injury or damage for which the plaintiff seeks recovery in accordance with T.C.A. § 20-1-119(a).

78.     That proper process issue and be served on the Defendants requiring them to answer this Complaint within the time period required by law.

79.      For judgment against all Defendants, jointly and severally, for compensatory damages in an amount the jury deems fair and reasonable, but not to exceed two million five hundred thousand dollars ($2,500,000.00).

80.     For judgment against Defendants CoreCivic, Sam Rogers, John Doe, and Randy Chapman, jointly and severally, for punitive damages in an amount the jury deems fair and reasonable, but not to exceed one million dollars ($1,000,000.00).

81.     For a jury of twelve (12) to try this cause.

82.     For such other, further and general relief to which this court deems may be appropriate, including costs and reasonable attorney's fees.

Respectfully submitted this _____8ᵗʰ_____ day of ____February____ 2021.


_____
James A.H. Bell, BPR #775
Jacob Feuer, BPR#033715
Attorneys for Plaintiff
The Law Offices of James A. H. Bell, P.C.
10 Emory Place, Knoxville, TN  37917
865-637-2900
JBell@Jamesahbell.com