# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **RICK ATKINS and KAROLE ATKINS,** **individually and as next of kin to the** **decedent, THOMAS ATKINS,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) ) | **Case No. 3:21-cv-00103** |
| **v.** | ) ) | **Judge Aleta A. Trauger** |
| **CORECIVIC, INC., SAM ROGERS,** **individually, and in his official capacity as** **Warden of Whiteville Correctional** **Facility, the MUNICIPALITY OF** **HARDEMAN COUNTY, TENNESSEE,** **RANDY CHAPMAN, and JOHN DOE,** | ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM

Before the court is the Motion to Dismiss or, in the Alternative, Motion to Transfer Venue (Doc. No. 21), filed by defendants CoreCivic, Inc. and Whiteville Correctional Facility Warden Sam Rogers (collectively, the "CoreCivic defendants" or "moving defendants").

For the reasons set forth herein, the Motion to Dismiss will be granted. However, the Motion to Dismiss is, in effect, actually a motion for partial dismissal, as it seeks only the dismissal of the federal claims against the moving defendants. The dismissal of those claims does not result in disposition of the state-law claims against the moving defendants. Moreover, because a federal claim remains pending against defendant Hardeman County, the court will not have "dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3), and, therefore, will not have a basis for declining to exercise supplemental jurisdiction over the state law claims against the moving defendants. However, it is also apparent, particularly with the dismissal of the federal

claims against CoreCivic, that the Western District of Tennessee is the more appropriate venue for this action. The alternative Motion to Transfer Venue will, therefore, be granted.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

As set forth in the First Amended Complaint ("FAC"), plaintiffs Rick Atkins and Karole Atkins are residents of Blount County, Tennessee and are the parents of the decedent, Thomas Atkins ("Thomas"). (Doc. No. 9 ¶ 1.) At the time the events giving rise to this lawsuit took place, Thomas was an inmate at the Whiteville Correctional Facility ("WCF"), a prison in Hardeman County, Tennessee operated by defendant CoreCivic, a private, for-profit corporation in the business of, among other things, owning and operating prisons. (*Id.* ¶¶ 2–4.) Defendant Rogers, at all relevant times, was employed by CoreCivic as the warden of WCF. (*Id.* ¶ 5.) Also named as defendants are Hardeman County, a municipality;[1] Randy Chapman, an inmate in the custody of the Tennessee Department of Correction ("TDOC") who is presently housed at the West Tennessee State Penitentiary but was previously at WCF; and an individual identified only as John Doe, an inmate at WCF. (*Id.* ¶¶ 6–8.)

As relevant to the claims against the CoreCivic defendants, the plaintiffs allege that their son Thomas entered into the custody of WCF in late 2019. (*Id.* ¶ 45.) Around 1:00 p.m. on February 9, 2020, Thomas was in his assigned cell with his cellmate when another inmate, known only as "Hunt" (defendant John Doe) entered the cell, demanded that Thomas's cellmate leave, and then threatened Thomas with a knife and proceeded to orally and anally rape him. (*Id.* ¶ 46.) Thomas

---

[1] The plaintiffs allege that TDOC "outsources prison management of WCF" to Hardeman County, which then subcontracts directly with CoreCivic to operate the facility. (Doc. No. 9 ¶¶ 14–15.) Hardeman County is named as a defendant because it has allegedly continued to renew its contract with CoreCivic to operate WCF, despite being on notice that the prison is not operated in compliance with the contract terms or federal law. (*Id.* ¶¶ 34, 42, 44, 58–61.)

was transported by prison officers to a nearby hospital for treatment. Upon his return to WCF, he was transferred to another cell. (*Id.* ¶¶ 47, 49.)

At some point after Thomas's transfer to a different cell, his new cellmate began "roughing him up and fighting" with him, which prompted Thomas to ask to be put into protective custody. This request was either ignored or denied. (*Id.* ¶ 50.) At approximately 1:44 a.m. on February 19, 2020, Thomas was found dead in his cell, having been brutally murdered by defendant Randy Chapman. (*Id.* ¶¶ 76.)[2]

In an effort to tie the sexual assault and murder to the CoreCivic defendants, the plaintiffs allege that audits of WCF conducted, in accordance with Tennessee law, by the Tennessee Comptroller of the Treasury in 2017 (with an audit period of 2014 to 2017) and 2019 (with an audit period of 2017 to 2019) reflected that WCF was grossly inadequately staffed during the 2017 audit period, that the staffing problems were not corrected by the time of the 2019 audit period, that staffing shortages may have "limited WCF's ability to effectively manage its prison population," and that CoreCivic's poor recordkeeping may have hindered TDOC's ability to "properly oversee[] CoreCivic's contract requirements." (*Id.* ¶¶ 19–20, 23–27.) The plaintiffs also allege that understaffing at CoreCivic facilities nationwide "appear[s] to be part of a nation-wide strategy by CoreCivic to limit costs and increase profits." (*Id.* ¶ 28.)

The FAC alleges that TDOC has a policy of requiring every inmate to receive a screening in compliance with the Prison Rape Elimination Act of 2003 (PREA) within seventy-two hours of arriving at a given facility and to undergo a second screening within thirty days of arrival. (*Id.* ¶¶ 36–37.) The purpose of these screenings is to "allow prison officials to make informed decisions

---

[2] The FAC does not state whether Chapman is the same individual whose conduct prompted Thomas to ask to be placed into protective custody.

with regard to inmate housing, cell assignments, and work in an effort to separate those inmates with a high risk of committing sexual abuse from potential victims." (*Id.* ¶ 37.) The 2019 Audit found that "several inmates . . . at CoreCivic facilities did not receive a PREA screening within the 72-hour and/or 30-day deadlines set by the policy." (*Id.* ¶ 38.) To be clear, the plaintiffs do not allege that these inmates were at WCF. Moreover, they do not allege that the PREA screenings did not occur; they simply allege that the screenings did not take place within the timeframe set by TDOC policy.

The PREA also includes a requirement that prisons enter sexual abuse allegations into the PREA Allegation System (PAS) within twenty-four hours of a reported sexual assault. The 2019 Audit found that, of the thirty-eight PREA reports made during the 2019 audit period (presumably at WCF, though the FAC does not make that clear), 89% of them were not entered into PAS within twenty-four hours. WFC acknowledged this failure and attributed it to staffing shortages. (*Id.* ¶¶ 39–41.) The plaintiffs do not allege that the sexual assault suffered by Thomas was not entered or timely entered into PAS.

Based on these allegations, the plaintiffs filed suit in federal court on February 8, 2021. (Doc. No. 1.) The FAC was filed just two days later, apparently to correctly identify Randy Chapman as a defendant in the case caption of the pleading and to include additional allegations relating to his criminal conviction for Thomas's murder. (*See* Doc. No. 9 ¶ 8.) The FAC asserts claims against CoreCivic, Rogers, and Hardeman County under 42 U.S.C. § 1983 (*id.*, Counts I and II); state law claims for wrongful death, negligence, and gross negligence against "all defendants"; a "premises liability" claim against Hardeman County and CoreCivic; and assault claims against John Doe and Randy Chapman (*id.*, Counts III–VIII).

Rather than answering, the CoreCivic defendants filed their Motion to Dismiss or, in the Alternative, to Transfer Venue, along with a supporting Memorandum of Law. (Doc. Nos. 21, 22.) The plaintiffs filed a Memorandum of Law in Opposition to the Motion to Dismiss (Doc. No. 24), and the defendants filed a Reply (Doc. No. 26). The plaintiffs, without seeking leave of court, filed a surreply (although it is styled as a "Response to Defendants' Reply"). (Doc. No. 27.)

## II.    MOTION TO DISMISS

### A.    Standard of Review

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a

plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

**B. Discussion**

*1. Section 1983 Claim Against Rogers in His Official Capacity*

The FAC specifically states that "[a]ll defendants are sued in their individual and official capacities." (Doc. No. 9 ¶ 5.)[3] The CoreCivic defendants move for dismissal of the official-capacity claim against Rogers on the basis that the claim is, in reality, a claim against the entity of which he is an agent. Because he is a CoreCivic employee, and the FAC also brings claims against CoreCivic, the moving defendants assert that the official-capacity claim against Rogers should be dismissed as superfluous. (Doc. No. 22, at 6.) In their response Memorandum, the plaintiffs state that they have no objection to the dismissal of the official-capacity claim against Rogers. (Doc. No. 24, at 5.) The court will, therefore, grant that portion of the moving defendants' Motion to Dismiss without further discussion and dismiss the official-capacity claim against Rogers.

*2. Section 1983 Claim Against Rogers Individually*

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. "Section 1983 is not the source of any substantive right." *Humes v. Gilless*, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001). Rather, it creates a "species of tort liability" for the violation of rights guaranteed in

---

[3] That statement makes no sense, insofar as it applies to CoreCivic (or Hardeman County), because entities cannot be sued in a representative capacity.

the Constitution itself. *Manuel v. City of Joliet*, 137 S. Ct. 911, 916 (2017) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)). Thus, to state a claim under § 1983, a plaintiff must, as a "threshold" matter, allege that he suffered a deprivation of a specific right secured by the Constitution or laws of the United States. *Id.* In addition, he must show that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).

Liability under § 1983 cannot be predicated upon a *respondeat superior* theory, that is, based upon the actions of a supervisor's subordinates or upon a supervisor's mere failure to act. *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Iqbal*, 556 U.S. at 676). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. Each defendant must be personally involved in the unconstitutional action." *Pineda v. Hamilton Cty.*, 977 F.3d 483, 490 (6th Cir. 2020) (internal quotation marks and citations omitted). A supervisor does not necessarily have to have "physically put his hands on the injured party or even physically been present at the time of the constitutional violation" to be individually liable. *Peatross*, 818 F.3d at 242. Rather, a supervisor may be liable under § 1983 where he "abandon[s] the specific duties of his position . . . in the face of actual knowledge of a breakdown in the proper workings of the department." *Winkler v. Madison Cty.*, 893 F.3d 877, 898 (6th Cir. 2018) (alterations in original) (citation omitted).

In this case, the constitutional right identified by the plaintiffs, on behalf of Thomas, is the right to be free from cruel and unusual punishment, as secured by the Eighth Amendment. More specifically, they allege that the defendants failed to protect Thomas Atkins from rape and a brutal assault that resulted in his death. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the

Eighth Amendment."). For the purpose of their Motion to Dismiss, the defendants do not dispute that Rogers acted under color of law or that the plaintiffs have adequately alleged that Thomas "suffered a deprivation of a specific right secured by the Constitution or laws of the United States." *Manuel*, 137 S. Ct. at 916. Instead, the moving defendants argue that the plaintiffs have not alleged facts showing Rogers' "personal involvement with Decedent, any personal action performed by Defendant Rogers which resulted in a deprivation of Decedent's rights at any time, or any knowledge that Defendant Rogers may have had concerning a risk of harm to Decedent prior to either incident referenced within the Amended Complaint." (Doc. No. 22, at 7–8.)

The court agrees. The FAC does not contain a single factual allegation regarding any particular action or inaction by Rogers. Instead, it alleges that the 2017 and 2019 audits show chronic understaffing at WCF, that reports by the Office of the Inspector General demonstrate serious understaffing at CoreCivic prisons around the country from 2011 through 2019 and elevated homicide rates at CoreCivic facilities compared to state-run facilities from 2014 through 2019, and that CoreCivic facilities were not strictly complying with PREA screening and reporting requirements. The plaintiffs allege that these facts "demonstrate that CoreCivic [and] its wardens . . . adopted and enforced a policy of understaffing and ignoring their duty to screen inmates to determine the risk they posed to other inmates." (Doc. No. 9 ¶ 43.) They further assert that this policy "reflected a deliberate indifference on the part of CoreCivic [and] its wardens to the safety of inmates in their care" and "created an environment that was particularly dangerous to inmates like Thomas Atkins, because of the systematic issues of understaffing and the increased violence that results from understaffing." (*Id.*) The plaintiffs assert that CoreCivic's and its wardens' "deliberate indifference proximately and factually led to the sexual assault and unnecessary death of Thomas Atkins." (*Id.*)

In response to the Motion to Dismiss, the plaintiffs contend that they have adequately alleged that Thomas suffered an Eighth Amendment deprivation caused by Rogers, simply because Rogers, as the warden of WCF, had "the power and responsibility to change staffing levels" and to "take other corrective action to ensure sufficient staffing levels at [WCF] but failed to do so." (Doc. No. 24, at 6.) They assert that it is "plausible" that Rogers "would know or should have known by his obligatory reports to the State" that WCF was not in compliance with TDOC policies and state law and that he clearly knew about the inadequate staffing and "actively participated [in], implicitly authorized, or knowingly acquiesced [in] the insufficient staffing." (Doc. No. 24, at 6.) Their surreply reiterates that Rogers, as WCF warden, had "the power and responsibility to change staffing levels or take other corrective action to ensure sufficient staffing" at WCF but failed to do so. (Doc. No. 27, at 2.)

The glaring problem with the plaintiffs' position is that the failure—even the knowing failure—to ensure adequate staffing at a prison does not, *per se*, amount to a constitutional violation. *Accord Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012) ("[O]vercrowding is not, in itself, a constitutional violation [unless it results] in an unconstitutional denial of such basic needs as food, shelter, or sanitation." (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Rhodes v. Chapman*, 452 U.S. 337, 345–48 (1981)). Thus, even if the court accepts as true that Rogers "knowingly acquiesced" in the chronic understaffing at WCF, that fact standing alone proves nothing, and certainly not causation. The question is whether such understaffing specifically led to the rape or the brutal assault that resulted in Thomas Atkins's death.

The generalized risk that understaffing at WCF might give rise to a somewhat heightened risk of prisoner-on-prisoner assault is not sufficient. The plaintiffs simply fail to draw a connection between the alleged understaffing and the assaults suffered by Thomas. For instance, they do not

allege that Rogers was on notice of a heightened number of violent assaults at WCF resulting from the alleged understaffing or that this facility had a documented problem of failing to protect inmates from assault by other inmates. They do not allege that Rogers knew or should have known that Thomas Atkins was particularly vulnerable to assault or had been threatened, had requested and been denied protective custody by some other prison official, or that Rogers had any other reason to know that Atkins was at risk of being sexually assaulted or murdered. They do not allege that WCF was not screening inmates in compliance with PREA, that Rogers knew or should have known that WCF was not in compliance with the PREA, or that he was knowingly allowing inmates with a history of violence against other inmates to be placed with the general prison population at WCF.[4]

The Sixth Circuit has repeatedly held that "[s]upervisory officials are not liable in their individual capacities unless they 'either encouraged the *specific incident of misconduct* or in some other way *directly participated* in it. At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (quoting *Hays v. Jefferson Cty.*, 668 F.2d 869, 874 (6th Cir. 1982)) (emphasis added). Because Rogers is not alleged to have had any personal involvement in the incidents giving rise to the plaintiffs' claims, the court will grant the defendants' motion to dismiss the § 1983 claim against him in his individual capacity.

---

[4] The court takes notice that WCF has a "minimum to medium" security designation. *See* https://www.tn.gov/correction/sp/state-prison-list/whiteville-correctional-facility.html.

### 3. *Section 1983 Against CoreCivic*

The moving defendants also argue that the FAC fails to state a colorable "*Monell* claim" against CoreCivic, because the plaintiffs have not alleged facts that, if true, show that Thomas's injuries were incurred because of a policy or custom of the entity. The court finds this argument to have merit as well.

The Supreme Court has held that a municipality is a "person" that may act under color of state law and incur liability under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). CoreCivic, as a private entity performing a traditional state function in operating a prison, also acts under the color of state law and may be liable under § 1983. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). The liability of an entity like CoreCivic is analyzed in accordance with *Monell* as if it were a municipal entity. *See id.*

Municipalities and prison contractors are not subject to *respondeat superior* liability in § 1983 actions; rather, they are responsible only for injuries caused by those acts that may fairly be said to represent official policy or a custom that, although not "formally approved by an appropriate decisionmaker," is nonetheless "so widespread as to have the force of law." *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 495–96 (6th Cir. 2008) (citation omitted). "A municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice." *Memphis, Tenn. Area Local v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004). For a custom—as opposed to a formal policy—to give rise to *Monell* liability, the custom "must 'be so permanent and well settled as to constitute a custom or usage with the force of law.'" *Doe v. Claiborne Cty.*, 103 F.3d 495, 507 (6th Cir. 1996) (quoting *Monell*, 436 U.S. at 691). Such a custom "must include '[d]eeply embedded traditional ways of carrying out state policy.'" *Id.* (quoting *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S. 362, 369 (1940)).

Besides demonstrating an underlying constitutional violation, "[a] plaintiff bringing a § 1983 claim against a municipality [or a contractor like CoreCivic] must . . . identify the [entity's] policy or custom that caused her injury." *Id.* at 495. The Sixth Circuit has identified four ways a plaintiff can "make a showing of an illegal policy or custom," as required to establish entity liability under § 1983:

> (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted).

In addition, the plaintiff must

> demonstrate that, through its deliberate conduct, the [entity] was the "moving force" behind the injury alleged. That is, a plaintiff must show that the [entity's] action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the [entity's] action and the deprivation of federal rights.

*Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 387, 404 (1997); *see also Ford*, 535 F.3d at 497 ("The key inquiry thus becomes whether, in viewing the County's policy in the light most favorable to [the plaintiff], there was sufficient evidence for reasonable minds to find 'a direct causal link' between the County's policy and the alleged denial of [the plaintiff's] right to adequate medical care."). In other words, "a plaintiff must identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation and internal quotation marks omitted); *see also Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003).

As discussed above, the plaintiffs allege that the defendants deprived Thomas Atkins of his Eight Amendment rights by failing to protect him from rape and assault. They allege that CoreCivic has an informal policy of deliberate indifference to understaffing at its facilities nationwide, including at WCF, and that its deliberate indifference "created an environment that

was particularly dangerous to inmates like Thomas Atkins, because of the systematic issues of understaffing and the increased violence that results from understaffing. [Its] deliberate indifference proximately and factually led to the sexual assault and unnecessary death of Thomas Atkins." (Doc. No. 9 ¶ 43.) As set forth above, however, the plaintiffs fail to allege facts suggesting that understaffing caused or contributed to Thomas's rape or death or that CoreCivic was on notice that chronic understaffing at WCF had contributed to a substantial increase in violent events at that facility. Thus, even if the court assumes as a factual matter that CoreCivic has adopted a policy of understaffing its facilities, the plaintiffs have not alleged facts that, if true, would establish that the injuries in this case were caused by that or any other purported policy. The facts as alleged in the FAC fail to establish deliberate indifference on the part of CoreCivic, for purposes of supporting a claim under 42 U.S.C. § 1983 against it.

The § 1983 claim against CoreCivic will also be dismissed.

### 4. State Law Claims

The moving defendants assert—in a footnote—that, if the court dismisses the federal claims against them, it should "refrain from exercising supplemental jurisdiction over any state law claim asserted" in the FAC. (Doc. No. 22, at 2 n.1.) The moving defendants apparently rely on 28 U.S.C. § 1367(c)(3), which provides that a district court may "decline to exercise supplemental jurisdiction" over state law claims once it "has dismissed all claims over which it has original jurisdiction." The defendants fail to acknowledge that the FAC asserts a § 1983 against defendant Hardeman County as well and that Hardeman County has—inexplicably, to be sure—not joined in the Motion to Dismiss. As a result, the Section 1983 claim against Hardeman County remains pending, and declining to exercise supplemental jurisdiction at this juncture would not be appropriate. The court, therefore, denies the footnoted request to dismiss the state-law claims asserted against the moving defendants.

## III.    ALTERNATIVE MOTION TO TRANSFER VENUE

### A.    Standard of Review

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

Courts consider the following factors when ruling on a motion to transfer under § 1404(a):

(1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining unwilling witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.

*Sullivan v. Tribley*, 602 F. Supp. 2d 795, 800 (E.D. Mich. 2009) (quoting *Grand Kensington, LLC v. Burger King Corp.*, 81 F. Supp. 2d 834, 836 (E.D. Mich. 2000). *Accord Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (holding that a "court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" (quoting *Stewart Org.*, 487 U.S. at 30).

"[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (citation omitted). Transfer is not appropriate if the result is simply to shift the inconvenience from one party to another. *Sullivan*, 602 F. Supp. 2d at 800 (citations omitted). However, a plaintiff's choice of forum is entitled to little weight "where none of the conduct complained of occurred in the forum selected by the plaintiff." *Am. Signature Inc. v. Moody's Invs. Servs., Inc.*, No. 2:09-CV-

878, 2010 WL 2667367, at *2 (S.D. Ohio July 2, 2010) (citations omitted). In addition, "when plaintiffs do not reside in their chosen forum, their choice should be given less weight than would otherwise be the case." *W.H. by & through M.H. D.R. v. Tenn. Dep't of Educ.*, No. 3:15-1014, 2016 WL 236996, at *3 (M.D. Tenn. Jan. 20, 2016) (Trauger, J.).

> **B. Discussion**

The moving defendants argue that transfer to the United States District Court for the Western District of Tennessee is warranted in this case, because WCF is located in Hardeman County, which is within the Western District; Sam Rogers is the warden at WCF, and CoreCivic operates WCF in Hardeman County; and the plaintiffs themselves allege that "the acts and omissions giving rise to [their claims] occurred at the WCF" (Doc. No. 22, at 14 (quoting Doc. No. 9 ¶ 10)). The defendants argue that, despite the plaintiffs' belief that reports and audits concerning CoreCivic and WCF are located within the Middle District of Tennessee, it is likely that the majority of witnesses and evidence will be found within the Western District. In addition, the plaintiffs reside in Maryville, Blount County, Tennessee, which is within the Eastern District. As a result, the plaintiffs will be required to travel, irrespective of whether the matter is transferred or remains in the Middle District.

In response, the plaintiffs first insist that they have pleaded sufficient facts to show that venue in this district is "proper." (Doc. No. 24, at 9.) The defendants do not contend that venue in this district is improper; rather, they contend that it is less convenient than venue in the Western District would be.

The plaintiffs further contend that the case should proceed in this forum because CoreCivic's principle place of business, in Brentwood, Tennessee, is the lawsuit's "center of gravity." (*Id.*) They claim that, "[m]ore likely than not, the policies and procedures, or lack thereof, implemented at Whiteville Correctional Facility were created at CoreCivic's principal place of

business in Brentwood, Tennessee. Additionally, more likely than not, all of the audits and insufficiency within the records were sent to CoreCivic's principal place of business for review." (*Id.*) They also maintain that other documents, including the contracts between CoreCivic and Hardeman County and between the State of Tennessee and Hardeman County, would likely be located within the Middle District.

Because the § 1983 "policy or custom" claim against CoreCivic is being dismissed, these arguments are not compelling. In addition, the plaintiffs do not address the moving defendants' argument that, because the plaintiffs themselves do not reside in this district, their choice of forum is entitled to less deference. The court finds that, because the acts and omissions giving rise to the plaintiffs' claims all occurred at WCF, within Hardeman County (irrespective of the fact that certain documents may be present in the Middle District), the relevant factors weigh strongly in favor of transferring this case to the Western District of Tennessee, Eastern Division, located in Jackson, Tennessee. The court, therefore, will grant the moving defendants' alternative Motion to Transfer Venue.

## IV.    CONCLUSION

For the reasons set forth herein, the court will grant the Motion to Dismiss the federal claims against defendants CoreCivic and Sam Rogers. This ruling does not dispose of all claims against them, however, as the federal claim against defendant Hardeman County is unaffected by this disposition, and the court retains supplemental jurisdiction over the state-law claims asserted against the moving defendants and the other defendants.

The court further finds that venue in the Western District of Tennessee is the more appropriate venue and, therefore, that the alternative Motion to Transfer Venue should be granted.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge